IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STEFNIE HAWLEY, as Legal Guardian, of THOMAS HAWLEY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CIV-25-151-SLP |
| BOARD OF TRUSTEES FOR THE OKLAHOMA COUNTY CRIMINAL JUSTICE AUTHORITY, et al., | ) ) ) ) ) | |
| Defendants. | ) ) | |

**O R D E R**

Before the Court are two related motions to dismiss Plaintiff's First Amended Complaint. First, Defendant Brandi Garner filed a Motion to Dismiss and Brief in Support [Doc. No. 33], to which Plaintiff responded [Doc. No. 39], and Garner replied [Doc. No. 46]. Second, Defendant Turn Key Health Clinics, LLC d/b/a TK Health ("Turn Key") filed a Motion to Dismiss and Brief in Support [Doc. No. 29], to which Plaintiff responded [Doc. No. 37], and Turn Key replied [Doc. No. 41]. Both motions are at issue.

**I.    Background[1]**

Plaintiff Stefnie Hawley, as legal guardian of Thomas Hawley ("Hawley"), brings this action arising from Hawley's detention at the Oklahoma County Detention Center ("OCDC"). *Id.* ¶ 4. The First Amended Complaint ("FAC") alleges Hawley has

---

[1] The Court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to [Plaintiff]." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014)). The Court includes only those facts relevant to the Motions to Dismiss.

documented cognitive and psychiatric disabilities, including autism spectrum disorder, intellectual disability, bipolar disorder, generalized anxiety disorder, and ADHD, and that his adaptive functioning is equivalent to that of a seven- to eight-year-old child. *Id*. ¶¶ 20-21. His mother, Stefnie Hawley, was appointed his legal guardian in November 2020 when he turned 18 years old because he lacks capacity to care for himself and make decisions regarding his personal safety, medical treatment, and legal affairs. *Id*. ¶ 22. Before the events at issue, Hawley had prior encounters with Del City police during mental health crises. *Id.* ¶ 23.

As relevant here, Defendant Turn Key contracted with the OCDC to provide medical services, including intake medical and mental-health screenings and necessary medical intervention for detainees. *Id.* ¶ 7. Defendant Brandi Garner served as OCDC's Jail Administrator and was responsible for supervising detention officers, overseeing detainee classification, and ensuring detainee safety. *Id.* ¶ 9. Garner allegedly was aware of previous incidents of sexual violence at OCDC and received reports regarding assaults from inadequate detainee classification. *Id.*

On or about March 31, 2023, while experiencing a mental-health crisis, Hawley called 911 from his home in Del City, Oklahoma. *Id.* ¶ 29. Although Plaintiff informed responding officers that Hawley had autism and other disabilities requiring medical intervention and requested that he be taken to a hospital rather than jail, officers transported him to OCDC without seeking crisis-intervention or medical assistance. *Id.* ¶¶ 33-38. The FAC further alleges the officers did not document or communicate his mental-health

history, disabilities, or special needs to OCDC officials and did not ensure he would be housed in an appropriate unit. *Id.* ¶¶ 44-47.

At OCDC, Hawley was booked into jail without any safeguards or accommodations related to his disabilities. *Id.* ¶¶ 46-51. Specifically, Plaintiff alleges that Turn Key medical staff were responsible for his initial health screening, but that screening was cursory and failed to adequately assess him as a high-risk detainee due to his intellectual disability, autism, and severe mental illness. *Id.* ¶¶ 52-53. OCDC staff did not conduct further evaluation and assigned him to a general-population holding cell rather than a medical or protective-housing unit. *Id.* ¶¶ 54-59.

Hawley was placed in a holding cell with another pretrial detainee, David Lamb, whom the FAC describes as a known violent offender with a history of sexual misconduct. *Id.* ¶ 66. According to Plaintiff, OCDC staff had prior knowledge of Lamb's violent behavior toward vulnerable detainees. *Id.* ¶¶ 67, 71. Despite knowledge of Lamb's propensity for sexual violence and Hawley's cognitive and psychiatric disabilities, OCDC and Turn Key placed Hawley in a cell alone with Lamb and left him unmonitored. *Id.* ¶ 72.

On or about April 1, 2023, Hawley was sexually assaulted by the detainee who coerced him into unwanted sexual acts and exploited his cognitive limitations. *Id.* ¶¶ 69, 73. Because of his autism, intellectual disability, and severe anxiety, Hawley was unable to properly respond to or defend himself from the assault. *Id.* ¶ 74. Later that day, after Plaintiff reported to OCDC that her son had been raped, OCDC personnel questioned Hawley and he confirmed he had been sexually assaulted. *Id.* ¶ 75. OCDC personnel nevertheless allegedly failed to take immediate protective action, and correctional officers

and medical staff allegedly failed to treat the report with urgency, isolate Hawley, or remove the offender from the holding cell. *Id.* ¶¶ 76-78. Turn Key medical personnel also failed to conduct a timely medical examination, and OCDC and Turn Key staff allegedly dismissed Hawley's complaints and delayed intervention despite signs of severe distress. *Id.* ¶¶ 80-82. According to Plaintiff, these events are part of a pattern of failure to provide proper care, medical evaluations, and referrals for inmates with mental health issues. *See e.g.*, *id.* ¶ 215.

Plaintiff asserts a § 1983 failure-to-protect claim against Garner in her individual and official capacities. *Id.* ¶¶ 217-225. Plaintiff asserts six claims against Turn Key for failure to protect, deliberate indifference to medical needs, unconstitutional policies and practices, failure to train or supervise, negligence, and negligent hiring or supervision. *Id.* ¶¶ 217–283. Both Garner and Turn Key move to dismiss these claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    Pleading Standard

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Pleadings that do not allow for at least a reasonable inference of the legally relevant facts are insufficient." *Burnett v. Mortg. Elec. Registration*

4

*Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013) (internal quotation marks and citation omitted).  And a complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.

Further, regarding § 1983 claims, there is a "need for careful attention to particulars, especially in lawsuits involving multiple defendants."  *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013); *see also Robbins*, 519 F.3d at 1250 (explaining that when plaintiff brings § 1983 claims against multiple defendants, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom").

## III.   Analysis

### A.  Defendant Brandi Garner

Plaintiff asserts a single claim against Defendant Garner alleging violation of the Fourteenth Amendment's due process clause for failure to protect pursuant to 42 U.S.C. § 1983.  Specifically, Plaintiff alleges that Garner violated Hawley's constitutional rights by failing to protect him from being sexually assaulted by Lamb.  *See* Pl. Resp. [Doc. No. 39] at 12.  As a pretrial detainee, Hawley was entitled to certain constitutional protections, including the right to be free from inmate attacks such as the sexual assault allegedly committed against him by Lamb.  *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993); *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (A prisoner has "a right to be reasonably protected from constant threats of violence and sexual assaults from other inmates.").  Such a claim has its genesis in the Fourteenth Amendment's guarantee of due process of law.  *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996).  This claim, however, is analyzed under the Eighth Amendment's "deliberate indifference"

standard.  *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999).  In this context, "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

Two elements must be established to sustain a failure to protect claim.  First, a pretrial detainee "must show that he is incarcerated under conditions posing a substantial risk of serious harm."  *Id.* at 834.  Second, the pretrial detainee must establish that the official was deliberately indifferent to the detainee's health or safety.  *Id.*  The official's state of mind is measured by a subjective standard, rather than an objective one.  That is, the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837; *see also Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018).

### 1.  *Individual Capacity*

A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability.  *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011).  Personal liability requires personal involvement in the alleged constitutional violation.  *Id.*  A plaintiff bringing a cause of action for supervisory liability must show that there was an "affirmative link" between the supervisor and the constitutional violation.  *George ex rel. Bradshaw v. Beaver Cnty.*, 32 F.4th 1246, 1255 (10th Cir. 2022).  To show an "affirmative link" and establish supervisory liability, a plaintiff must demonstrate: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and

(3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.*; *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

Here, there are no allegations that Garner was personally involved in any of the specific events giving rise to Hawley's claims. Rather, Plaintiff's claim is grounded in Garner's supervisory role and alleges that "Garner, as Jail Administrator, had an obligation to oversee classification procedures and ensure vulnerable detainees were housed safely, yet failed to do so despite prior knowledge of sexual assaults at OCDC." FAC ¶ 220. Beyond this allegation, there is no additional detail as to Garner's involvement. And as Defendant notes, there are only four allegations in the FAC that reference Garner specifically, including the introductory allegations describing her role. [Doc. No. 33] at 10; FAC [Doc. No. 27].

Although Plaintiff alleges that Garner was "directly aware of previous incidents of sexual violence within OCDC" and "failed to implement policies to protect detainees with known cognitive impairments," these allegations are conclusory and do not satisfy the requisite pleading standards. *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Further, there are no allegations to suggest that she "acted with the state of mind required to establish the alleged constitutional deprivation," nor is there any allegation from which the Court can infer that Garner subjectively drew the conclusion that a substantial risk of serious harm existed. *Riddle*, 83 F.3d at 1204. Even viewing the allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to state a plausible claim against Garner,

7

and the claim should be dismissed.  Garner is therefore also entitled to qualified immunity. *Montoya v. Vigil*, 898 F.3d 1056, 1064 (10th Cir. 2018).

### 2. *Official Capacity*

It is well-established that "an official-capacity suit is . . . to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Where both an entity and an officer named in their official capacity have been named, the official capacity claim is duplicative and should be dismissed.  *See London v. Beaty*, 612 F. App'x 910, 912 (10th Cir. 2015) (affirming the district court's conclusion the § 1983 claims asserted against the officers in their official capacities were duplicative of the claims asserted against the City, and thus, should be dismissed"); *see also  Hayes v. Owen*, No. 22-CV-0230-CVE-SH, 2023 WL 2716579, at *8 (N.D. Okla. Mar. 30, 2023) (dismissing redundant official capacity claims asserted against jail defendants).  And "in the § 1983 context, a suit against the board of county commissioners or some other county official in their official capacity is, in substance, a suit against the county."  *Id.* (citing *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010)).

Here, Plaintiff concedes that the claim against Garner in her official capacity as Jail Administrator is duplicative of the claims against the Board of Trustees for the Oklahoma County Criminal Justice Authority.  [Doc. No. 39] at 13.  Despite this, Plaintiff argues that the Court should exercise its discretion to maintain the claim because there is "no harm" in doing so.  *Id.*  This argument is unpersuasive, and the Court finds that judicial economy favors dismissal of the duplicative official capacity claim.  The claim against Garner in her official capacity is dismissed.

**B. Defendant Turn Key**

Plaintiff asserts six claims against Turn Key: four federal claims under 42 U.S.C. § 1983 and two state law claims.  The federal claims are (1) Fourteenth Amendment failure to protect; (2) Fourteenth Amendment deliberate indifference to serious medical needs; (3) Monell liability for unconstitutional policies, practices, or customs; and (4) failure to train and supervise.  The state law claims sound in negligence and negligent hiring, training, and supervision.

### 1. *State Law Claims*

Turn Key moved to dismiss both state law claims on the ground that it is immune from tort liability under the Oklahoma Governmental Tort Claims Act.  [Doc. No. 29] at 25–27.  In her Response, Plaintiff acknowledged the Oklahoma Supreme Court's recent decision in *Sanders v. Turn Key Health Clinics*, 566 P.3d 591 (Okla. 2025), and confirmed that she is proceeding "solely on her federal constitutional claims under 42 U.S.C. § 1983." [Doc. No. 37] at 14.  Accordingly, Plaintiff's fifth and sixth causes of action against Turn Key are DISMISSED.

### 2. *Federal Claims*

Turn Key's Motion appears to seek dismissal of all four federal claims but does not analyze them individually.  Instead, the Motion is structured around two arguments: (1) that Plaintiff has failed to plausibly allege the subjective component of the deliberate indifference standard, and (2) that Plaintiff failed to support a *Monell* theory because Plaintiff does not identify a specific Turn Key policy or custom that was the moving force behind the alleged constitutional violations.  *See* Mot. [Doc. No. 29].  Construed

generously, it appears the first argument is meant to apply to multiple of Plaintiff's claims, although Turn Key does not explicitly identify which ones and, in fact, never references the word "protect" anywhere in its brief.  Further, even the Motion's two sections are not clearly divided as to non-*Monell* claims and *Monell* claims.  *Compare id.* at 17 (Section A making *Monell*-type arguments regarding whether policies were a "moving force" behind a constitutional deprivation), *with id.* at 21–24 (Section B addressing solely *Monell* arguments).

These ambiguities present several problems that prevent complete resolution at this stage.    The Federal Rules of Civil Procedure require that motions set out "with particularity" the grounds for the motion.  Fed. R. Civ. P. 7(b)(1).  "By requiring notice to the court and the opposing party of the basis for the motion, [R]ule 7(b)(1) advances the policies of reducing prejudice to either party and assuring that 'the court can comprehend the basis of the motion and deal with it fairly.'" *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999) (citation omitted).  That standard is not met here.  The legal standards applicable to each claim are not necessarily as interchangeable as Turn Key's brief implies, and the relevant inquiries differ in meaningful ways depending on the nature of the constitutional violation alleged, the role of the specific defendant, and the theory of liability at issue.  *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989); *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000).

The Motion's treatment of the deliberate indifference argument illustrates the difficulty.  That section of the brief most specifically addresses the second cause of

10

action—deliberate indifference to serious medical needs—and the only cause-of-action allegations cited in the argument are drawn from that claim.[2]  *See* [Doc. No. 29] at 17 (citing FAC ¶ 229).  Whether and how the deliberate indifference argument was intended to apply to Count One, Count Three, or Count Four is not adequately and meaningfully developed.  The omissions are potentially consequential.  For example, in the context of a deliberate indifference to medical needs claim, jail and medical personnel have important gatekeeping functions to ensure that a detainee receives proper medical treatment.  *See, e.g., Sealock*, 218 F.3d at 1211 (delaying or refusing to fulfill gatekeeper role may give rise to liability for deliberate indifference); *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).  Thus, this is a distinct basis for liability that the Motion's collective approach leaves unaddressed even though this portion of the brief focuses nearly exclusively on that claim.  Moreover, even if Turn Key had clearly articulated the standards and authority for each claim it challenges, Turn Key's failure to apply the specific facts as alleged to each claim warrants denial of its Motion.  *See, e.g.*, *White v. Padilla*, No. CV 21-1204 MIS/JFR, 2022 WL 17249287, at *15 (D.N.M. Nov. 28, 2022) (noting a district court is "under no obligation to address arguments wanting for adequate development").

The Motion's section on "a *Monell* claim" is similarly unclear as to which claims Turn Key intended for this section to encompass.  *See, e.g.* [Doc. No. 29] at 22 (giving cursory reference to allegations related to this claim but then citing general *Monell* standards).  Nevertheless, the Court disagrees with Turn Key's argument that Plaintiff

---

[2] Relatedly, almost all of the authority cited in this section of Turn Key's brief analyze or address a claim for deliberate indifference to medical needs.

failed to plead facts sufficient to infer that a Turn Key policy, procedure, or custom was the moving force behind a constitutional deprivation. For example, when viewing the allegations as a whole and in the light most favorable to Plaintiff, the allegations state that: Turn Key provided medical services at OCDC and had policies or procedures related to screening and care for detainees with cognitive disabilities, that Turn Key's intake forms noted Hawley's cognitive impairments, and that Turn Key failed to properly assess and classify Hawley as high risk. FAC [Doc. No. 27] ¶¶ 7, 52–58, 229, 238. As alleged, Turn Key's failures to identify him as high risk led to jail staff placing him in a general population cell with Lamb. *Id.* ¶¶ 52–58. Thus, at this stage, the Court finds that Plaintiff has plausibly stated a claim for municipal liability against Turn Key. *See Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023) ("To state a claim against a municipal entity, a plaintiff must allege facts showing (1) an official policy or custom, (2) causation, and (3) deliberate indifference.").

Turn Key's own brief correctly observes that § 1983 litigation demands "careful attention to particulars." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013). While this most frequently applies in the context of a plaintiff's allegations in the complaint, the reasoning is analogous to the issues presented here. The breadth of law addressing the different types of Fourteenth Amendment claims is both vast and nuanced, and collectively arguing the deliberate indifference standard across claims has the potential to omit discussion of certain key inquiries, as it has here. As presented, the Motion does not provide a sufficient basis for the Court to fully evaluate dismissal of each of Plaintiff's federal claims, and the Court will not independently construct the claim-specific analysis

the Motion omits. *See Kirkpatrick v. Colvin*, 663 F. App'x 646, 649 (10th Cir. 2016) (noting that "it isn't [the Court's] obligation to search the record and construct a party's arguments"). Turn Key's Motion is denied as to Plaintiff's four federal claims asserted pursuant to 42 U.S.C. § 1983.

## IV. Leave to Amend

Plaintiff's Response includes a short request for leave to amend her pleading, should the Court deem dismissal of any claims proper. Resp. [Doc. No. 39] at 15. Plaintiff's request is vague and fails to identify any relevant additional factual allegations or governing law that would deem leave to amend proper. *See Calderon v. Kan. Dep't of Social and Rehab. Servs.*, 181 F.3d 1180, 1186–87 (10th Cir. 1999) (Generally, "a court need not grant leave to amend when a party fails to file a formal motion."). Nor has Plaintiff complied with this Court's local rule governing amendment pursuant to Rule 15. *See* LCvR 15.1.

Under these circumstances, Plaintiff has failed to provide sufficient notice of the basis for amendment. *See Sullivan v. Univ. of Kansas Hosp. Auth.*, 844 F. App'x 43, 52 (10th Cir. 2021) (holding the plaintiff "failed to properly seek leave to amend" where he made "perfunctory, conditional requests in his responses to the motions to dismiss that he be allowed to amend if the court found his allegations deficient"); *see also Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 706 (10th Cir. 2014) ("[A] bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based."). The Court, therefore, declines to consider

13

whether leave to amend should be granted, but without prejudice to Plaintiff submitting a properly filed motion for leave to amend.

## V.    Conclusion

IT IS THEREFORE ORDERED that Defendant Brandi Garner's Motion to Dismiss [Doc. No. 33] is GRANTED.  All claims against Defendant Brandi Garner in her official and individual capacities are DISMISSED WITHOUT PREJUDICE for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that Defendant Turn Key Health Clinics, LLC d/b/a TK Health's Motion to Dismiss and Brief in Support [Doc. No. 29] is GRANTED IN PART and DENIED IN PART.  The Motion is DENIED as to Plaintiff's first four causes of action in the First Amended Complaint.  The Motion is GRANTED as to the Fifth and Sixth causes of action, and those claims are DISMISSED WITHOUT PREJUDICE pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED this 27th day of March, 2026.

_____
SCOTT L. PALK
UNITED STATES DISTRICT JUDGE